# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**TIMOTHY FINCH,**

**Plaintiff,**

**Case No.:**

**v.**

**BAYCARE HEALTH SYSTEM, INC.,**

**Defendant,**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, TIMOTHY FINCH, pursuant to the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4301, *et seq.*, ("USERRA") and sues Defendant, BAYCARE HEALTH SYSTEM, INC. (hereinafter referred to as "BAYCARE" or "Defendant") and alleges:

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1367 and 1441(b).

2.      Venue lies within the United States District Court for the Middle District of Florida, Tampa Division because a substantial part of the events giving rise to this claim occurred in this Judicial District and is therefore proper pursuant to 28 U.S.C. 1391(b).

## PARTIES

3.      Plaintiff, TIMOTHY FINCH, is an adult resident of Pinellas County, Florida, is a person who is entitled to protection pursuant to 38 U.S.C. § 4311, since at all times material hereto he was a "uniformed service member" as a member of the Air Force Reserves.  At all times material, Plaintiff was an "employee" of Defendant within the meaning of 38 U.S.C. § 4303(3).

4.      Defendant, BAYCARE, is a Florida Not for Profit Corporation licensed at authorized to conduct business in this Judicial District.  At all times material, Defendant was Plaintiff's employer as defined by USERRA.

## GENERAL ALLEGATIONS

6.      Congress enacted USERRA in 1994 to, among other things, "encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service."

7.      Under USERRA, an employer must return an employee to a position "which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by [a period of service in the uniformed services], or a position of like seniority, status and pay, the duties of which the person is qualified to perform[.]" 38 U.S.C. § 4313(a)(2)(A). This statutory obligation commonly is known as the "escalator principle." 20 C.F.R. §

1002.191.

8.     USERRA's escalator principle "requires that the employee be reemployed in a position that reflects with reasonable certainty the pay, benefits, seniority, and other job perquisites, that he or she would have attained if not for the period of service." 20 C.F.R. § 1002.191. "In all cases, the starting point for determining the proper reemployment position is the escalator position, which is the job position that the employee would have attained if his or her continuous employment had not been interrupted due to uniformed service." *Id*. at § 1002.192.

9.     USERRA rights are not diminished because an employee holds a temporary, part-time, probationary, or seasonal employment position." 20 C.F.R. § 1002.41.

10.     USERRA is liberally construed to achieve its purpose of protecting those who serve in our armed forces from inequitable employment practices.

## FACTUAL ALLEGATIONS

11.     For eighteen (18) years, Plaintiff has proudly served as a member of the United States Air Force and Air Force Reserves.  Plaintiff has served in the Air Force Reserves since August 2010.

12.     Plaintiff currently holds the rank of Master Sergeant/E-7.

13.     During Plaintiff's decorated military career, he received numerous medals for service during the Global War on Terrorism, Operation Iraqi Freedom,

Operation Enduring Freedom, and Operation Inherent Resolve.  Plaintiff also received four (4) Air Force Good Conduct Medals.  In 2021, Plaintiff was the Senior Enlisted Non-Commissioned Officer for the 1st Quarter for the Reserve Wing at MacDill Air Force Base.

14.    In or around April 2019, Plaintiff began his employment with Defendant as a Registered Respiratory Therapist.

15.    In 2021, Plaintiff was called to active duty for approximately seven (7) months (February 2021 to March 2021 and April 2021 to October 2021).

16.    Upon completion of Plaintiff's tour of duty, Plaintiff was honorably discharged and issued a Form DD-214, which he provided to Defendant.

17.    On or about September 30, 2021, Plaintiff received a $655.00 bonus. Similarly situated employees received $2,500.00.  The bonus was for Defendant's team members who worked in COVID areas during 2021.  When Plaintiff was not called for Active Duty, Plaintiff worked COVID areas for Defendant. The maximum available bonus for eligible employees was $5,000.00.

18.    On or about March 29, 2022, Plaintiff contacted his direct supervisor, Veronica Gomez and asked if there was a mistake with his bonus.  Gomez told Plaintiff that the bonus was given to all employees "working Covid" during 2021.

19.    Gomez told Plaintiff that he received a prorated bonus compared to the full $5,000 bonus that his co-workers received.  Gomez explained that the

reason Plaintiff's was prorated was because he was on active military orders for seven (7) of the twelve (12) months during 2021.

20.    That same day (March 29, 2022), Gomez spoke with Defendant's Human Resources department.  Defendant's Human Resources confirmed that Defendant would not pay Plaintiff the full bonus.

21.    On or about March 30, 2022, Plaintiff spoke to Nicole Henry (Department Manager) and asked if she could investigate the bonus situation.

22.    On March 31, 2022, Plaintiff received a $977.00 bonus.  Similarly situated employees received $2,500.00.

23.    On or about April 7, 2022, Henry reached out to Plaintiff and advised Plaintiff that her emails and copies of Plaintiff's military orders reached Defendant's Vice President of Compensation.  However, since Plaintiff did not work throughout the entirety of 2021, he did not qualify for the full bonus. Moreover, since Plaintiff's position with Defendant was considered "Prime Pool," contractually Plaintiff was only obligated to work 10 days per month, which is not considered full-time.

24.    However, other "Prime Pool" employees received full bonuses.

25.    On or about April 15, 2022, Plaintiff consulted with Buck McTee (Employer Support of the Guard and Reserve).  McTee subsequently reached out to Defendant to explain that Plaintiff was entitled to the full bonus under USERRA.

26.     On or about April 19, 2022, McTee told Plaintiff that no one from Defendant was returning his calls.

27.     That same day (April 19, 2022), Plaintiff spoke with a Human Resources representative of Defendant that was familiar with the issue.  The representative told Plaintiff that the director would return McTee's call but Defendant was "checking on a few things first."

28.     On or about April 22, 2022, an attorney for Defendant contacted McTee and informed him that Defendant was sticking with its decision and would not pay Plaintiff the full bonus.  The attorney further told McTee that Plaintiff was being treated like any other employee that took a leave of absence or FMLA leave during 2021.  Lastly, the attorney told McTee that he reviewed Plaintiff's work history and it was "a shame" that Plaintiff left during 2021 because Plaintiff would have received the full bonus based on the hours Plaintiff typically worked.

## COUNT I
## USERRA – DISCRIMINATION

29.     Plaintiff, TIMOTHY FINCH, realleges and incorporate paragraphs one (1) through twenty-eight (28) as though set forth fully herein.

30.     At all times material hereto, Defendant failed to comply with 38 U.S.C. § 4311. Specifically, the above-described acts constitute intentional discrimination pursuant to USERRA.

31.     USERRA prohibits discrimination against persons who serve in the

uniformed services.  Specifically, "[a] person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation." 38 U.S.C. § 4311(a).

32.     Defendant violated the express mandate and purpose of USERRA regarding Plaintiff by denying Plaintiff bonuses based on his service in the uniformed services.

33.     The bonuses are benefits of employment as defined in 38 U.S.C. § 4303(2).

34.     Defendant's violations of 38 U.S.C. § 4311 was willful within the meaning of 38 U.S.C. § 4323(d)(1)(C).

WHEREFORE, Plaintiff prays for the following damages against Defendant:

      a.      Back pay and benefits;

      b.      Prejudgment interest on back pay and benefits;

      c.      Front pay and benefits;

      d.      Liquidated damages;

      e.      Attorneys' fees and costs; and

f.    Injunctive and declaratory relief;

f.    For any other relief this Court deems just and equitable.

## COUNT II
## USERRA - REEMPLOYMENT

35.    Plaintiff, TIMOTHY FINCH, realleges and incorporate paragraphs one (1) through twenty-eight (28) as though set forth fully herein.

36.    A person who is reemployed under USERRA is "entitled to the seniority and other rights and benefits determined by seniority that the person had on the date of the commencement of service in the uniformed services plus the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed. 38 U.S.C. § 4316.

37.    Under USERRA, an employer must return an employee to a position "which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by [a period of service in the uniformed services], or a position of like seniority, status and pay, the duties of which the person is qualified to perform[.]" 38 U.S.C. § 4313(a)(2)(A). This statutory obligation commonly is known as the "escalator principle." 20 C.F.R. § 1002.191.

38.    USERRA's escalator principle "requires that the employee be reemployed in a position that reflects with reasonable certainty the pay, benefits, seniority, and other job perquisites, that he or she would have attained if not for

the period of service." 20 C.F.R. § 1002.191.  "In all cases, the starting point for determining the proper reemployment position is the escalator position, which is the job position that the employee would have attained if his or her continuous employment had not been interrupted due to uniformed service." *Id*. at § 1002.192.

39.     USERRA rights are not diminished because an employee holds a temporary, part-time, probationary, or seasonal employment position." 20 C.F.R. § 1002.41.

40.     Defendant's violations of 38 U.S.C. § 4316 were willful within the meaning of 38 U.S.C. § 4323(d)(1)(C).

WHEREFORE, Plaintiff prays for the following damages against Defendant:

      a.     Back pay and benefits;

      b.     Prejudgment interest on back pay and benefits;

      c.     Front pay and benefits;

      d.     Liquidated damages;

      e.     Attorneys' fees and costs; and

      f.     Injunctive and declaratory relief;

      f.     For any other relief this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

41.     Plaintiffs, TIMOTHY FINCH, on behalf of himself and others similarly situated, demands a trial by jury on all issues so triable.

**DATED** this 1st day of August 2022.

FLORIN GRAY BOUZAS OWENS, LLC.

s/ *Gregory A. Owens*
**GREGORY A. OWENS, ESQUIRE**
Florida Bar No.: 51366
greg@fgbolaw.com
**CHRISTOPHER GRAY, ESQUIRE**
Florida Bar No.: 902004
chris@fgbolaw.com
16524 Pointe Village Drive, Suite 100
Lutz, Florida 33558
(727) 254-5255
(727) 483-7942 (fax)
*Trial Attorneys for Plaintiff*